UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALBERT FEVRI SHKEMBI | Mag. No. 23-13132 (LDW) <br><br> OPINION AND ORDER OF EXTRADITION |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is the United States' application for the extradition of Defendant Albert Fevri Shkembi to the nation of Albania pursuant to 18 U.S.C. §§ 3184 *et seq*. Having considered the parties' written submissions, as well as exhibits admitted into evidence and arguments presented at the September 12, 2023 extradition hearing, the application for extradition is **GRANTED**.

      I.      BACKGROUND

The United States Government, acting on behalf of the Government of Albania, seeks the extradition of Defendant pursuant to 18 U.S.C. § 3184 and an extradition treaty between the United States and Albania in connection with the Defendant's conviction *in absentia* in Albania of attempted narcotics trafficking in complicity. In support of this application, the Government offers the following evidence, *inter alia*, by way of certified and translated copies:[1] (1) the Treaty of Extradition between the United States of America and the Kingdom of Albania, signed on March 1, 1933 ("Extradition Treaty") (Govt Hearing Ex. 1B); (2) Albania's request for the extradition of Defendant (Govt Hearing Ex. 1C); (3) the First Instance Court for Serious Crimes Decision, dated

---

[1] Exhibits that were Bates-stamped by the Government are referenced by those Bates numbers, beginning with the prefix "S" for Shkembi. The Bates-stamped documents comprise Government Hearing Exhibit 1A, Bates-stamped S-00001 through S-00317. Government Hearing Exhibits 1B and 1C are not Bates-stamped.

April 13, 2016, convicting Defendant of attempted narcotics trafficking in complicity ("Trial Court Decision") (S-00076 to S-00122); (4) the Trial Court Prosecution Report (S-00022 to S-00027); (5) the Court of Appeal for Serious Crimes Decision, dated November 22, 2016, affirming Defendant's conviction ("Appellate Court Decision") (S-00155 to S-00187); (6) information regarding Defendant's transit into and out of Albania from Albania's immigration records system, the Total Information Management System ("TIMS") (S-00245 to S-00258); (7) a summary of the identification of Defendant from a photo array by witness Eleni Xhafa (S-00301 to S-00317); and (8) a letter from the Albanian Ministry of Justice concerning Defendant's possible right to a retrial upon extradition to Albania due to his trial having been conducted *in absentia* (S-00292 to S-00293).  These exhibits were admitted into evidence at the extradition hearing.  (Hearing Transcript ("Tr.") at 12-15).

The foregoing exhibits establish the following.  On June 3, 2014, Albanian police made an arrest at the border of Albania and Greece of Eleni Xhafa, who was in possession of 464.8 grams of heroin.  (Trial Court Decision, S-00080 to S-00082).  Upon questioning, Xhafa identified Shkembi as an individual who arranged the narcotics transaction by supplying her with money and heroin.  (*Id.* at S-00085).[2]

Albanian authorities issued an arrest warrant for Shkembi on suspicion of trafficking narcotics.  (S-00215 to S-00216).  As Shkembi could not be located in Albania to effectuate his arrest, the Trial Court declared his escape and appointed a defense attorney to represent his interests.  (S-00221, S-00227).  Subsequently, Shkembi was charged and tried *in absentia* (represented by defense counsel) in Albania, together with a co-defendant named Nardi Neli.  (S-

---

[2] The evidence presented by Albania linking Defendant to this narcotics transaction will be discussed further below in the analysis of probable cause.

00076 to S-00122). Shkembi was convicted in a written opinion of attempted narcotics trafficking in complicity, in violation of Albanian Criminal Code Articles 22 and 283/a/2, and sentenced to twelve years' imprisonment. (*Id*.). The conviction was upheld on appeal in a written opinion. (S-00155 to S-00187).

Defendant was arrested in New Jersey on June 16, 2023 upon a warrant issued by the District of Connecticut based on an extradition Complaint in that District; he was subsequently recharged in this Court by extradition Complaint. (*See* ECF No. 1). Defendant had his initial appearance before this Court on June 16, 2023 and consented to detention pending a hearing on the instant application for extradition. (ECF Nos. 2, 5). The Court initially set an extradition hearing for July 14, 2023, which was adjourned to September 12, 2023 at the request of the defense. (ECF No. 7). The parties briefed the extradition application, (ECF Nos. 8, 9, 11), and the Court held a hearing on the record on September 12, 2023 and reserved decision. (ECF No. 10; Tr. at 79-80).

## II.  DISCUSSION

### A.  Legal Standards

"Extradition is an executive rather than a judicial function," *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006), and the ultimate decision whether to honor an extradition request rests with the Secretary of State. 18 U.S.C. §§ 3184, 3186. The Court's duty with respect to extradition is to conduct a "limited inquiry" to determine "whether there is probable cause to believe that the defendant is guilty of the crimes charged. If the evidence is sufficient, the court makes a finding of extraditability and certifies the case to the Secretary of State." *Sidali v. I.N.S.*, 107 F.3d 191, 194-95 (3d Cir. 1997). Therefore, the Court's inquiry in this proceeding is limited to:

> (1) whether there is an applicable extradition treaty between the requesting country and the requested country that is in full force and effect;

(2) whether there are charges pending against the proposed extraditee in the requesting country;

(3) whether the treaty authorizes the extradition for the crime alleged to have been committed; and

(4) whether there is competent legal evidence to support a finding of probable cause as to the charge for which the extradition is sought.

*In re Extradition of Bolanos*, 594 F. Supp. 2d 515, 517 (D.N.J. 2009).[3]

### B. Defendant is Subject to Extradition

Defendant concedes that the Government has established the first three required extradition elements. (Tr. at 16). He challenges only the fourth element – probable cause to believe that he committed drug trafficking activity as alleged in Albania's extradition request, and he further contends that he was denied due process by Albania in connection with his trial *in absentia*. (*See* ECF No. 11; Tr. at 49-79). The Court determines below that each of the criteria for extradition, including the fourth element, is satisfied.

#### 1. The Extradition Treaty is in Full Force and Effect

The United States and Albania entered into an Extradition Treaty on March 1, 1933. (Govt Hearing Ex. 1B). The Government provided the September 9, 2022 Declaration of Tom Heinemann, an Attorney Adviser in the Office of the Legal Adviser for the State Department, who affirms that the Extradition Treaty remains in full force and effect. (*Id.* ¶ 2). As Defendant does not challenge the validity or the applicability of the Extradition Treaty, this element is satisfied.

---

[3] Defendant does not dispute that this Court has authority to conduct the extradition proceedings or that it has jurisdiction over him. It is undisputed he was arrested in this State on June 16, 2023. *See Hoxha*, 465 F.3d at 560. *See also* 18 U.S.C. § 3184; L. Crim. R. 5.1(k); ECF Nos. 1, 2.

### 2. Defendant Faces Charges in Albania

The documents presented by the Government demonstrate that Defendant was charged and convicted *in absentia* of attempted drug trafficking in complicity, in violation of Albanian law, and sentenced to a term of incarceration on that conviction. (Govt Hearing Ex. 1A, S-00076 to S-00122 (Trial Court Decision) and S-00155 to S-00187 (Appellate Court Decision)). The Government of Albania represents that it may allow Defendant a retrial of these charges upon his extradition to Albania. (S-00292 to S-00293). Defendant does not dispute that these charges are or were pending against him in Albania. Therefore, this element is satisfied.

### 3. The Treaty Authorizes Extradition

Next, the Court considers whether the charged offense "falls within the scope of the Treaty, and whether the offense is illegal in both countries." *Bolanos*, 594 F. Supp. 2d at 518. When determining whether the offense for which extradition is sought is illegal in both countries, it is not necessary that "the elements, purposes, or punishment for foreign offenses be identical to ours." *United States v. Riviere*, 924 F.2d 1289, 1302 (3d Cir. 1991). Instead, the rule of dual criminality is satisfied when "the acts charged [are] proscribed in each nation." *Id.*; *see In re Extradition of Aquino*, 697 F. Supp. 2d 586, 596 (D.N.J. 2010).

Here, the Extradition Treaty between the United States and Albania allows for extradition of "any person who may be charged with, or may have been convicted of, any of the crimes or offenses specified in Article II of the present Treaty . . . provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed." (Extradition Treaty, art. I). Albania represents that Shkembi committed the offense of attempted narcotics trafficking in complicity, in

5

violation of Article 283/a/2 in connection with Article 22 of the Albanian Criminal Code. (ECF No. 1 ¶ 4). Extraditable crimes under the Extradition Treaty include narcotics crimes and attempts to commit such crimes. (Extradition Treaty, art. II, subsections (25) and (26)). Moreover, the activities of which Shkembi was convicted in Albania, if committed in the United States, would be subject to felony prosecution under multiple federal statutes, including 21 U.S.C. § 841(a) and (b)(1)(B); 21 U.S.C. § 844; 21 U.S.C. § 952; and 21 U.S.C. § 963. Thus, Defendant concedes, and the Court finds, that the Extradition Treaty authorizes his extradition on the drug trafficking conviction in Albania.

### 4.     Probable Cause Exists

Finally, the Court must determine whether the evidence from Albania supports a finding of probable cause to believe that Defendant engaged in "drug trafficking in complicity, attempted" as charged by Albania. The charged criminal conduct requires a showing that Defendant engaged in, or attempted to engage in, "import, export, transit and trade of narcotic . . . substances . . . in complicity" with others. (S-00109).

To determine probable cause, courts in extradition proceedings apply the same standard used in federal preliminary hearings. *Aquino*, 697 F. Supp. 2d at 597. Thus, the Court considers whether there are "reasonable ground[s] to believe the accused guilty of the crimes charged," and not "whether the evidence is sufficient to justify a conviction." *Sidali*, 107 F.3d at 196, 199 (quotation omitted); *see Aquino*, 697 F. Supp. 2d at 597. In making that determination, the Court must accept facts presented in the extradition application as true and may rely on hearsay. *See Harshbarger v. Regan*, 599 F.3d 290, 293 (3d Cir. 2010) (noting extradition court may rely on hearsay in making probable cause determination); *Hoxha*, 465 F.3d at 561 (same); *In re Extradition of Cheung*, 968 F. Supp. 791, 794 n.6 (D. Conn. 1997) (noting statements and offers

6

of proof of demanding state must be accepted as true); *In re Extradition of Marzook*, 924 F. Supp. 565, 592 (S.D.N.Y. 1996) (same). The Court must consider the totality of the circumstances in determining whether they are "sufficient to warrant a prudent man in believing that the [extraditee] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quotation omitted); *see also In re Extradition of Jean*, No. 13-MJ-3588 (MF), 2013 WL 4502102, at *3 (D.N.J. Aug. 22, 2013) (noting totality of circumstances must be considered in determining probable cause) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The question before the Court is whether the extradition record provided by Albania is sufficient to create a reasonable belief that Defendant knowingly provided assistance to Eleni Xhafa in her attempt to transport narcotics into Albania. The Court finds that it is, first addressing the evidence in the record establishing probable cause and next Defendant's arguments to the contrary.

          a.        **Evidence in the Record Supporting Probable Cause**

First, the statements of Eleni Xhafa alone establish probable cause to believe that Defendant engaged in attempted narcotics trafficking in complicity with her. Following her arrest on June 3, 2014, Xhafa reported that she had been recruited by Shkembi to traffic narcotics and had successfully imported heroin from Turkey to Albania on previous occasions with Shkembi's guidance and assistance. (Trial Court Decision, S-00080, S-00085). Xhafa described her last, unsuccessful attempt to transport heroin into Albania as follows. Shkembi had previously introduced Xhafa to a woman (believed to be Manjola Terrolli); on June 3, 2014, the woman met Xhafa in Albania and gave her 5100 Euros to take to Shkembi in Greece. (S-00085). Xhafa then was taken by another woman (believed to be Andonia Valeria) by car to Thessaloniki, Greece; en route, "the driver of the vehicle was called by [A]lbert Shkembi, who wanted to know where they

7

were and when they would arrive." (*Id*.). Xhafa related that upon her arrival in Thessaloniki, she was met by Shkembi, whom she gave the Euros and in return received, directly from him, two packages of heroin. (*Id*.). Those were the packages with which she was arrested at the Albanian border on June 3, 2014. (S-00086). Later, in 2019, Xhafa identified Shkembi from a photo array as the person with whom she had engaged in the foregoing transactions. (S-00301 to S-00317).

Second, the statements of other witnesses corroborated Xhafa's account. For instance, the Trial Court relied upon a statement by Manjola Terrolli, made in the presence of her defense attorney, that she was involved in a "love affair" with Shkembi and had at his request given the Euros to Xhafa prior to her traveling to Greece, as Xhafa had stated. (S-00086). Further corroborating Xhafa's account, the Trial Court relied upon statements by a woman named Andonia Valeria, who acknowledged driving Xhafa from Albania to Greece and receiving a telephone call en route from a man inquiring as to their location and estimated time of arrival in Thessaloniki. (S-00086 to S-00087). Valeria then drove Xhafa back to Albania, where they were arrested at the border. (*Id*.).

Third, intercepted text messages and telephone calls further corroborate these witnesses' accounts. The Appellate Court Decision relies on intercepted phone calls, reportedly between Terrolli and Shkembi on June 2 and 3, 2014, discussing Terrolli giving the money to Xhafa for the purchase of narcotics and sending Xhafa in a taxi to Greece; these communications are cited verbatim, suggesting they were recorded by authorities. (S-00166 to S-00167). The Trial and Appellate Court Decisions also relied on inculpatory statements reportedly made by Shkembi in intercepted phone calls with various people, indicating how the authorities would be unable to connect him to Xhafa because she had not travelled to Greece with him. (*See e.g.*, Appellate Court Decision, S-00169 ("She has never travelled with me so they cannot make the connections. I have

8

entered through Macedonia, she has entered by bus.  I have travelled by a plane she has travelled by bus.  We have not had a concrete relation.  The investigation is closed in three months and that is the end."); Trial Court Decision, S-00104 through S-00108).  In intercepted calls between Shkembi and an individual named Kleanthi Agolli on or about June 8, 2014, after Xhafa was arrested, Shkembi reportedly discussed the need to flee to the United States given that he had American citizenship, or instead perhaps to Mexico.  (S-00024, S-00106).

Finally, evidence indicating that Shkembi traveled from Albania to Greece the day before Xhafa was arrested further supports his involvement in the narcotics transaction.  Travel records from Albania's TIMS system demonstrate that Shkembi left Albania on June 2, 2014 at the Gorica border crossing point "towards Greece."  (Appellate Court Decision, S-00164; TIMS records, S-00254).  This, combined with Xhafa's account that she met Shkembi in Greece for the heroin transaction on June 3, 2014, (S-00085), and Shkembi's intercepted phone call admitting that he crossed from Albania into Greece, via Macedonia, (S-00168 through S-00169), provide further evidence supporting probable cause that he was, in fact, in Greece at the relevant time.

Based on the statements of at least three witnesses, Xhafa's identification of Defendant in a photo array, corroborative intercepted communications, and the TIMS records showing Defendant's presence in, then exit from, Albania the day before the alleged narcotics transfer in Greece, the totality of the evidence provides probable cause to believe Defendant engaged in attempted narcotics trafficking "in complicity" with others as charged by Albania.  The Court therefore finds the element of probable cause is satisfied.

### b. Defendant's Challenges to Probable Cause

Defendant argues on several grounds that probable cause has not been established.  The Court addresses each of these in turn below.

Defendant contends that the "most glaring issue" demonstrating lack of probable cause is that Albania presented insufficient evidence to establish that Shkembi was in Greece on June 3, 2014. Defendant points out that Albania's TIMS records indicate only that Shkembi left Albania on June 2, 2014 and entered Macedonia, not Greece. (ECF No. 11 at 5-6). He argues that Xhafa's purported statement that she met Shkembi in Greece is not competent proof of his presence there because the extradition record does not include a copy of the statement itself and she did not testify in court.

With respect to the reliability of Xhafa's statements, it is true that the extradition record does not contain many details of the circumstances surrounding Xhafa's statement to authorities.[4] But a nation seeking extradition is not required essentially to "retry" the case in the extradition proceeding. *See Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981) ("It is fundamental that the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing. . . . That is the task of the . . . courts of the other country."). Under the requisite standard, cited above, this Court is to accept the statements in the extradition record as true, and hearsay statements like those attributed to Xhafa are to be considered as competent proof. *Harshbarger*, 599 F.3d at 293; *Hoxha*, 465 F.3d at 561; *In re Extradition of Cheung*, 968 F. Supp. at 794 n.6. Indeed, a finding of probable cause in an extradition hearing "can be based entirely on . . . written statements by foreign prosecutors or judges summarizing the evidence expected to be used." *In re Extradition of Breyer*, 32 F. Supp. 3d 574, 582 (E.D. Pa. 2014); *see Haxhiaj v. Hackman*, 528 F.3d

---

[4] The Trial Court Decision does, however, indicate that Xhafa's defense attorney was present during her interrogation. (S-00085 (noting that Xhafa's June 4, 2014 declarations were made during an "interrogation in the presence of the defence lawyer"); S-00094 (same)). In any event, this country's legal standards for the admission of confessions are inapplicable in an extradition proceeding. *See, e.g.*, *Valenzuela v. United States*, 286 F.3d 1223, 1229 (11th Cir. 2002) ("Even if the statements . . . were compelled, the [Fifth Amendment Self-Incrimination] Clause would not bar their use in the extradition hearing.").

282, 292 (4th Cir. 2008) (magistrate judge could rely on Italian appellate court decision summarizing evidence presented at trial *in absentia* to find probable cause for extradition because "[a] requirement that the requesting government present 'actual evidence' that it intended to submit, or already had submitted, at trial is antithetical to the comity basis that underlies extradition"). Here both the Trial Court Decision and the Appellate Court Decision set forth as established facts that Xhafa made all of the statements recited above. This Court on an extradition proceeding is not entitled to "go behind" those facts, but rather must accept them in its determination of probable cause. *Collins v. Loisel*, 259 U.S. 309, 317 (1922) (noting that "unsworn statements of absent witnesses may be acted upon by the committing magistrate"). Therefore, Xhafa's statements, which were relied upon by the Trial and Appellate Courts in Albania, support a finding of probable cause for extradition.

Further, Defendant's challenge to the evidence establishing his presence in Greece for the narcotics transaction does not preclude a finding of probable cause. Assuming arguendo that Defendant is correct in arguing that the TIMS records only establish that Shkembi traveled from Albania to Macedonia on June 2, 2014, and not that he entered Greece, there is further evidence in the extradition record that Shkembi was in fact in Greece at the time of the drug transaction. As stated above, Xhafa's statements place him in Thessaloniki, Greece to provide her the heroin, and Defendant in his intercepted phone call with Agolli on or about June 8, 2014 notes that he had traveled from Macedonia to Greece by plane to meet Xhafa. The totality of the evidence is therefore sufficient to establish probable cause that Shkembi was in Greece at the time of the heroin transaction, even if Albania's TIMS records alone do not establish his crossing into Greece.

Defendant further argues that the absence of his fingerprints on the narcotics packages undermines a finding of probable cause. Here, the defense seems to conflate the requisite standard

11

of probable cause with the duty at a domestic trial to find guilt beyond a reasonable doubt, a standard that does not apply in extradition. *See Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *In re Extradition of Czerech*, No. 19-MJ-6763 (MF), 2020 WL 603998, at *5 (D.N.J. Feb. 6, 2020) (same). As Shkembi points out, apparently there were no identifiable fingerprints on the package of heroin at all, and thus his fingerprints were not found on the package. (S-00082). While there may be no physical evidence to tie Shkembi to the heroin packages themselves, the statements attributed to Xhafa, Terrolli, Valeria, Agolli and Shkembi himself do tie him to the transaction that resulted in the seizure of the heroin packages from Xhafa at the Albanian border. Therefore, the absence of Shkembi's fingerprints on the heroin package does not negate a finding of probable cause.

Defendant also attacks Xhafa's identification of his photo in the array presented to her in 2019, some five years after she was arrested in the drug transaction at issue. (ECF No. 11 at 7). Although an identification of Shkembi at the time of Xhafa's arrest might well have constituted stronger evidence against him than a several-years-later identification, her identification of Shkembi in at least two separate photo arrays does provide further evidence to support probable cause. (*See* S-00304 to S-00317). Even if the delay in having Xhafa identify Shkembi would constitute grounds in the United States for excluding evidence of the photo identification, the Court is not permitted to review the extradition record through the lens of American legal standards. *See Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986) ("[A]lthough the magistrate may take the circumstances of an identification into account in assessing its reliability, there is no *per se* rule that specifies which identification procedures are 'competent' for probable cause purposes."); *see*

12

*also Manta v. Chertoff*, 518 F.3d 1134, 1145 (9th Cir. 2008) (affirming magistrate judge's reliance on photo identification made eight years after crime committed in finding probable cause for extradition).

Finally, Defendant argues that there is insufficient evidence to link him to many of the telephone numbers attributed to him in the Albanian court decisions. (ECF No. 11 at 3). As an initial matter, there is sufficient evidence of probable cause here to support extradition without the phone and text intercepts. Moreover, the Albanian courts attributed these phone numbers and calls to Shkembi, pointing out the context in which they determined the identity of the participants to the communications, including the participants' identification of themselves in texts and intercepts, and the Court is required to credit those findings as established facts on this application. (S-0023 to 00024; S-00086; S-000106 to S-000107). But even beyond that, there is substantial evidence to support that the phone numbers attributed to Shkembi were in fact used by him. In several calls, Shkembi (whose first name is Albert) reportedly identified himself by the nickname Berti or responded when being addressed as Berti, (S-00106 to S-00107), and his alleged mistress, Manjola Terrolli, identified him as the user of certain of the numbers in her statements to police. (S-00023 to S-00024, S-00107). Xhafa, as well, identified several phone numbers that she knew to be used by Shkembi. (S-00023 to S-00024, S-00086). Therefore, the alleged ambiguity in the extradition record as to the use of certain phone numbers by Shkembi is adequately addressed for the purpose of establishing probable cause.

### C. Defendant's Due Process Arguments

While acknowledging that Albania is not bound by American constitutional due process standards, Defendant argues that the Albanian trial *in absentia* failed to provide him even "minimal safeguards" to ensure that he received due process. Specifically, Defendant contends that he was

13

never notified of the charges before being tried *in absentia* in Albania; his appointed defense counsel failed to defend him competently; and the charges against him were based on a flawed investigation commenced by an Albanian police officer named Nardi Neli, who was tried and convicted in the same trial as Shkembi.  (ECF No. 11 at 7-8).

At the outset, the Court notes that even assuming procedural errors were made by the Albanian courts that are cognizable by this Court on this extradition application, the Government represents that Albania has indicated in its extradition request that Shkembi may be entitled to a retrial upon extradition, at which time he could present any available defenses and exercise all of the rights afforded to him under Albanian law.  (S-00288, S-00292 to 293).  The Court does not understand Defendant to be challenging the fairness of the Albanian criminal justice system overall, or the likelihood that any retrial would be fair, but only certain procedures employed during his trial *in absentia*.  (*See* Tr. at 38 (defense counsel acknowledging Defendant does not "argue that he should not have been tried *in absentia*")).

However, consideration of whether Albania provided Shkembi with sufficient notice of the charges against him and effective assistance of counsel at his trial *in absentia*, or whether his trial should have been severed from his co-defendant's, runs afoul of the rule of non-inquiry, which precludes this Court in an extradition proceeding from making judgments as to the fairness of the procedures used by a foreign legal system. *See United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("Under the rule of non-inquiry, courts refrain from investigating the fairness of a requesting nation's justice system . . . ." (quotation omitted)); *see also Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 253 (3d Cir. 2008) ("[T]his doctrine bars courts from evaluating the fairness and humaneness of another country's criminal justice system, requiring deference to the Executive Branch on such matters.").  The Court is not permitted to apply American due process standards

14

to foreign proceedings. *See Neely v. Henkel*, 180 U.S. 109, 122 (1901); *Hilton v. Kerry*, 754 F.3d 79, 89 (1st Cir. 2014).

Serious deficiencies in the foreign trial *in absentia* could, in theory, affect the weight that the Court gives to the evidence submitted by the country requesting extradition when making its probable cause determination. *See United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1373 (S.D. Fla. 1999) ("Given the complete lack of notice, lack of representation, the conviction in absentia, the waived right of appeal, the [Bolivian] court's apparent disregard for its own procedures and substantive law, and the unquestioning acceptance of obviously perjured testimony, this Court casts a skeptical eye on the evidence presented by the Government in this case."). Here, the alleged procedural defects in the Albanian trial *in absentia* give the Court no reason to doubt or discount the witness statements, intercepts, and TIMS records that form the basis of the Court's probable cause finding. With regard to the alleged lack of notice to Shkembi before he was tried *in absentia*, Defendant does not argue that an *in absentia* trial is *per se* violative of due process, but rather that Albania should have made a greater effort to locate him before trying him *in absentia*. However, the defense admits that there is nothing in the record either way indicating whether Albania attempted to locate Shkembi abroad, (Tr. at 73), and, in any event, the purported failure to notify him of the trial prior to conducting it *in absentia* has no bearing on the substance of the evidence introduced at that trial, and later in this application. The same is true of Defendant's arguments concerning the vigorousness of his defense counsel at the trial *in absentia* and his having been inappropriately tried with a co-defendant.[5] All the requirements for

---

[5] Nor do the alleged procedural violations in the Albanian trial *in absentia* shock the conscience to such a degree that this Court will disregard the rule of non-inquiry. *See Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960) (noting, in *dicta*, that "[w]e can imagine situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the [rule of non-inquiry]"); *see also*

15

extradition having been met, Defendant must assert these defenses to the Secretary of State or in Albania.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the request of the Albanian government for Shkembi's extradition is **GRANTED**.  This ruling, with a copy of the evidence submitted in this proceeding, shall be certified to the Secretary of State.  It is further **ORDERED** that Shkembi is committed to the custody of the United States Marshal pursuant to 18 U.S.C. § 3186 until his surrender to Albania.

Dated: October 30, 2023

_s/ Leda Dunn Wettre_  
Hon. Leda Dunn Wettre  
United States Magistrate Judge

---

*Hoxha*, 465 F.3d at 564 n.14 (characterizing the *Gallina* exception as "theoretical" and noting that "no federal court has applied it to grant habeas relief in an extradition case").

16